The next matter is Case No. 15-2254, Janarius Manje v. Louis Chaves. Thank you. Mr. Pavlov, good morning. Yes, good morning as well, Your Honor. May I kindly reserve one minute for rebuttal? You may. May it please this Honorable Court, good morning to all Your Honors. I'm Attorney Todd Pavlov, here today on behalf of Janarius Manje, who's present. This is a case of first impression, and that issue here is, in our view, the improper application of the 2009 Supreme Court case Nijuan v. Holder. The Nijuan case dealt with an approach to interpreting whether a crime is an aggravated felony, and that is applicable here because Mr. Manje was applying for U.S. citizenship. USCIS improperly dealt with that holding in the following reason. Nijuan deals with a circumstance-specific approach, but it is not a boundless approach. It is an approach which is tethered by that holding. That's a case where a defendant who was prosecuted in a criminal court, not unlike Mr. Manje, stipulated at his federal sentencing hearing to an amount of loss of well more than $10,000. The amount of loss was something like $693 million. And then later in a collateral removal proceeding, tried to argue that you can't look to the fact that I stipulated in a court of law that I committed an amount of loss of over $10,000. This case is completely different in that here, just like the holding in Nijuan, that holding talks about judicial determinations. Here we have a judicial determination, but it wasn't made at the original sentencing hearing. It was made later in the post-conviction process. It was made after the case was closed, after the sentence had been imposed and served. Correct. After the restitution had been fully paid, and it was a finding on a matter that was not an element in any way of the state court offense. That is correct, Your Honor. What is unique here... In other words, you want us to abdicate the fact-finding process to the state court. You want us to write a rule that says, if with respect to a prior state case, a defendant goes in and has the state court make a finding on anything, whether or not it's an element of the offense, regarding the closed case, the federal court is still stuck with it. That is not what we are advocating, Your Honor. And I will explain clearly what it is we are advocating. This is a case, Nijuan is from 2009, a year later is the landmark case, Padilla v. Kentucky, which dealt with immigration advice in the deportation context. Yeah, it dealt with ineffective assistance of counsel. That is correct. And we tried that, and the state court lost. That's not exactly correct, Your Honor. Well, wasn't there an attempt made on behalf of your client to set aside his state court conviction on the grounds of ineffective assistance? That is correct. Was that attempt unsuccessful? That attempt was successful in part. Let me please explain why, Your Honor. Under Massachusetts law, there's three primary bases for dealing with post-conviction issues. You have Rule 25, which is a direct judgment notwithstanding the verdict. That deals with trial issues. In the context of a plea, there's Rule 30. Rule 30A deals with legal sentences. Rule 30B deals with new trials, and it's been applied to the vacatur of pleas. And then Rule 29 deals with revision of sentences. Now, 29 and 30 both adopt the same flexible standard, that is, whether justice may not have been done either at the trial, at the plea, or during the sentencing hearing. Mr. Nanja used Rule 30B and argued that his lawyer was ineffective per the Padilla case, which has been held to be retroactive under state law in Massachusetts since April 1, 1997. The judge in that case made a finding under Prong 1 of Safarian, which is also the same as Strickland, that the lawyer provided deficient performance under the ineffective assistance standard, but not enough to amount to prejudice. When Mr. Nanja filed his Rule 29 motion that I did on his behalf, the whole thrust of the motion was about ineffective assistance of counsel, a fact unknown to the court at the original sentencing hearing, a fact that was never litigated, unlike in Vision 1, where there was a stipulation of fact about restitution and amount of loss. Now, state court judges in Massachusetts, unlike federal court judges, restitution refers to the amount of loss. They don't make findings about amount of loss. As part of the sentencing power, which can be revisited under Rule 29, a Massachusetts state court judge can order restitution, stay-away orders, probation. In this circumstance, continue the case without a finding of guilt, which is a state issue that is still a conviction under federal innovation law. So what's unique here is Mr. Nanja doesn't go back and beg for mercy and say, oh, woe is me. I'm getting deported one day. For the rest of my life, I'll never be a citizen. The motion is rooted in the fact that a prior judge made a finding that the lawyer who negotiated the plea did not satisfy one prong of the ineffective assistance standard. But rather than vacating the entire conviction, what the court did was address the issue of restitution and then explain later on the amount of loss. Except that our case law says that restitution and amount of loss are two different things. Well, that's correct. But what the judge did originally is we had a hearing under Rule 29, rooted under the fact that was unknown to the court, the fact that the lawyer didn't give any immigration advice at all to Mr. Nanja. Conducted a hearing and then decided to split the $12,000 of restitution in half, $6,000 for the count that dealt with fraud, a count that doesn't even list on the complaint who the victim is, and then $6,000 on the licensing charge. And then when the court, when USCIS denied the citizenship application, they said that the revision didn't matter because what controls is the amount of loss. We went back to Judge Duggan and asked him to clarify what his decision meant. And that order that was drafted, that the judge signed, is straight out of the vega, is compliant with Nijuan v. Holder, it is entitled to full faith and credit. First of all, excuse me, it's not entitled to full faith and credit. Full faith and credit doesn't relate to state court findings. It relates only to state court judgments. And the judgment in this case is the judgment of conviction. That was given full faith and credit. That's why your client has been charged, his immigration status has been altered by the felony charge. So I don't think there's a full faith and credit argument here at all. You certainly haven't briefed it of any authority. I respectfully disagree. This is a judicial finding about an amount of loss. But the amount of loss isn't an element of the offense, and it's not even an award or part of the punishment they can make. The Massachusetts court had the authority to make a restitution award, which it did. But the federal cases all say that state court restitution is different than amount of loss. Right, but the cases do not say that a state court judge cannot actually determine what an amount of loss is within its own criminal court proceedings. And that is what happened here. Under the Rule 29 standard, whether justice may not have been done, a Massachusetts court is entitled to reconsider the entire sentence that was imposed, which included the original order of restitution, and which could have included here what the amount of loss is when the court articulated that restitution was in an amount of $12,000. That's exactly what the justice did in this case. Then you end up with a specific stipulation by a defendant at a sentencing hearing. In that case, the Supreme Court made it clear that you have an opportunity to contest it at a sentencing hearing. Mr. Dangier did not have an opportunity to contest it because his lawyer didn't know what he was doing regarding immigration. Years later, under the Padilla line of cases, the court had an opportunity to look at again the sentence anew, armed with the knowledge that the lawyer did not give proper immigration advice and never contested the amount of loss. And the court made a specific finding as to the amount of loss and judicial determination, which is recognized in the Nijuan case. And that judicial interpretation, in our view, is entitled to full faith and credit. And that judicial determination undermines the decision below by USAS and by the magistrate judge stating that this is an aggravated felony. This is not an aggravated felony because, unlike the DeVega case, here you have a specific finding that says the amount of loss for fraud is separate and distinct from the amount of loss for the charge of larceny by the judge who has the authority under Massachusetts law to fashion a sentence and to mete out justice and to reconsider that sentence. If they got it wrong, you want to relitigate the facts, the government's argument here is essentially a similar argument that was made below by the Commonwealth of Massachusetts. The Commonwealth never appealed the decision that its decision has finality. If Judge Duggan flipped a coin and said I'm ruling in favor of the defendant or did something completely ridiculous, the proper course of action would have been for the state to make an appeal to the Massachusetts Appeals Court and argue that the court got it wrong. That never happened, and the judge made a specific finding of the amount of loss. I'll continue that rebuttal. Thank you, Your Honor. Good morning. Good morning. I have a question for the government. We respectfully request that Your Honors affirm the judgment below denying Mr. Nanje's application for naturalization because he is an aggravated felon. He has admitted to being convicted of a crime involving fraud or deceit, and he has failed to prove that the loss amount to the victim, Harvard Pilgrim Health Care, was $10,000 or less. What do you say to counsel's argument that we are somehow bound by this most recent finding by the Boston Municipal Court? We respectfully disagree with that argument, Your Honor. It's not a finding of fact. It's not based on any evidence. It is a signed order. We don't deny that. But it was entered in response to a motion by Mr. Nanje in which he flat out admitted that the only reason he was asking the court to split loss $6,000 for the crime involving fraud and deceit and $6,000 for larceny, which is not a crime of fraud or deceit, was for immigration purposes. He made that crystal clear. So regardless of the reason that is listed in his motion, his argument is that the mass commonwealth courts essentially under Rule 29 of 30 have the option to them of revisiting a sentence and that a revision in effect revises the original order of judgment. I believe that that is right. That can happen. But there was no revision of the sentence. The sentence remained the same. Nine months probation, a coif, and a restitution order of $12,000. Well, there was a revision to the extent that it apportioned the restitution between two separate counts as opposed to one. That's right. And so now we have a change to restitution, but of course restitution is not the issue. The issue is the amount of loss. This court has said the two are not the same. You can look at the restitution order. It may be relevant, but that is not the issue. And candidly, the issue in this case is squarely decided by this court's ruling in Conte v. Gonzalez from 2006 in which you, Judge Selye, wrote, quote, when a restitution award has been artificially manipulated for the sole purpose of influencing an alien's immigration status, that award is not controlling with respect to the amount of loss. And that is precisely what happened here. He admitted in his motion that Judge Dugan signed a proposed order. And I'll just quote from that motion. Due to these pleas, which are considered aggravated felony convictions, Mr. Nanjay is subject to deportation. That's page 103 of the joint appendix. Quote, Mr. Nanjay is not only ineligible for citizenship status, he is at serious risk of being deported based upon his conviction of an aggravated felony. That's at page 107. I mean, there are at least six, excuse me, at least seven admissions in that motion that the only reason he was asking the court to split it into six and six was to affect his immigration status. He's telling the truth, apparently. Why is that manipulation? Well, you mean he's telling the truth in that he would prefer not to be deported? And the court that sentenced him is willing to go along with that because apparently the judge understood that to be an appropriate request. Well, it's a different judge. The judge who's sentencing was Judge Flaherty. The judge who signed the six and six is Judge Dugan. But we're not saying that he was dishonest in his motion saying that he didn't want to be deported. Well, let me ask you this. If the court had done that to begin with, would we be here? We would not be here. So, I realize that the opinion that you've cited may be controlled here. I haven't said otherwise. I'm wondering, is that court entitled to some deference? Some acceptance of their official act? I'm sorry, can you ask the question again? Is the municipal court's order entitled to any deference at all? It is not. This court has said in Conte that that kind of an order which is solely done to manipulate, to affect an alien's immigration status is a, quote, unquote, ploy. And it's cited in favor of that position, the decision issued by the Third Circuit in Massoud v. Holder, excuse me, Monroe v. Ashcroft, in which then Judge Alito said, quote, when the restitution order is not based on the finding as to the amount of the loss, but is instead intended solely to affect the defendant's immigration status, the amount of restitution is not controlling, close quote. Does it matter, though, that the reason we're here in the first place is because at least prong one of Strickland and the Mass equivalent was found that the attorney representing the appellant was deficient? I think the ineffective assistance of counsel, Your Honor, that argument is a red herring, and I'll explain why. First of all, Padilla v. Kentucky is not... Isn't that one of the reasons the judge granted him relief in the first place? No. The Padilla v. Kentucky argument was raised... He made four post-conviction motions. The Padilla v. Kentucky ineffective assistance argument was raised in motion number two. That motion was rejected by Judge Ford. She wrote that even if you find that prong one is met, prong two is not met because he suffered no prejudice, because he was willing to accept a plea that was even worse than what Judge Flaherty, the sentencing judge, then said. He's... Mr. Nanje said, look, I've given you a quaff, 11 months probation, and I'll pay $20,000. Judge Flaherty said, I'll do you one better. You can have nine months probation and only $12,000 restitution if you pay it today. He said, great, I'll do that. Judge Ford said, you would never have gotten a better deal. In fact, the evidence of your guilt was overwhelming. If you'd gone to trial, you would have faced 10 years in the House of Correction. Now, motions three and four had to do with splitting the $12,000 restitution into six and six, and that was not an ineffective assistance argument. That was a straight, help me, I'm going to be deported, plea for the mercy of the court. And that was Judge Dugan, not Judge Ford. Now, Judge Ford, after rejecting the ineffective assistance Padilla argument, Mr. Nanje did not appeal that ruling, so he cannot attack it collaterally in this case. So the ineffective assistance argument really is a red herring. And again, Padilla is not even mentioned in Mr. Nanje's briefs. But isn't he saying, look, but for the ineffective assistance that the original plea deal, even with the $12,000, would have been structured differently? That's what he's saying, but there is no record evidence to support that, and it's his burden, of course, in a naturalization case. Why do I say that? Because there is no record evidence, because the attorney who represented him didn't know any immigration law. So how can you have evidence of something that the attorney would not have done because of ignorance? Because he said in his second motion that Judge Ford rejected, if I had known there were immigration consequences, which of course is belied by his plea tender under which he signed, I understand there are immigration consequences, I would have gone to trial. Or, he says, and that's in the record, I would have tried, I would have asked my counsel to try to persuade the prosecutor for the Commonwealth to give me a better deal. But the Commonwealth's offer on the deal, as you can see from the record, was you've got to plead guilty, no admission to sufficient facts, plead guilty on that crime of fraud or deceit, and you get two years, I can't remember if it was probation or in jail, and $20,000 restitution and 100 hours of community service. There is no indication in the record that the Commonwealth ever offered or ever considered offering the restitution being associated solely with the larceny charge. It's his burden of proof, and any doubts have to be resolved in favor of the government. At the bottom, Your Honors, looking at this under the circumstances, you have to look at the circumstances of this case, and the circumstances here are so analogous to the de Vega case. Mr. Nanjay submitted one claim to his health insurance company, the victim, Harvard Pilgrim Healthcare, and he said during one hospital stay, for I think it was three weeks, in Cameroon, I had malaria, and I had to pay that hospital bill of $11,965, and Harvard Pilgrim Healthcare said, okay, here's your $11,965. That's what happened. You can't say that that's a $6,000 loss. In fact, Mr. Nanjay has not argued to this court, or to the district court, or to USCIS, that the loss to Harvard Pilgrim, in fact, was $6,000. And there isn't, you can't, because it was clearly $11,965, or perhaps more if you add the expenses to Harvard Pilgrim in investigating those false claims, and you could tack on another $8,000. But there's simply no way to say that the actual loss was $6,000. And you can see that in Judge Dugan's order, the motion says, please sign this, I'm going to be deported, which of course is a separate issue from what we have today. This is naturalization. It doesn't say, Judge Dugan, the loss actually was $6,000, because you know what, even though I filed a false claim for $11,965, the check I got from Harvard Pilgrim was for only $6,000. He's never alleged that. Those aren't the facts. The facts are that Harvard Pilgrim lost $11,965. In the full course of conduct, actually four charges, well, three charges he pled sufficient facts to, but they were interrelated conduct. They're lesser included offenses. He admitted to sufficient facts of a crime, a fraud, or deceit, and he hasn't proved that the loss to the victim. He can't, because it was $11,965. It wasn't under $10,000. Thank you. Thank you. Yes, thank you again, Your Honors. I'll be brief. Just real quickly, Joint Appendix page 99 through 109, that's a copy of the motion that Judge Dugan originally ruled on. Padilla v. Kentucky. There's block paragraph quotes in the motion. There's reference to ineffective assistance of counsel. There's reference to the plea judge not being aware of that fact at the time of the original sentence. Now, the government has just essentially conceded that if this plea was originally structured in this way, we wouldn't be here. I would respectfully suggest that is not the case, because of the approach they have taken here, that you could never plead to a case because the state could never make a finding about amount of loss in a case in which restitution is ordered. It would completely undermine the plea bargaining process throughout this country, and in particular in Massachusetts, as pointed out by a Meeky counsel who filed a compelling brief on behalf of Mr. Nanjay. This is a twofold issue. When you plead, the court can resentence you under state law. That sentence, in our view, is entitled to full faith and credit, and if that judge got it wrong, he would be taken aside from this forum in this form. Thank you, Your Honors. Thank you.